UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 0 1 2010

P.M.
TIME A.M. _____

---------------------------------------------------------------X
:
EDDIE YAMPIERRE,                          :
:
Petitioner,              :          **MEMORANDUM AND ORDER**
:
- against -                 :             05-CV-2249-ENV
:
WILLIAM PHILLIPS, Superintendent of Green :
Haven Correctional Facility,              :
:
Respondent.              :
:
---------------------------------------------------------------X

**VITALIANO, D.J.**

*Pro se* Petitioner Eddie Yampierre seeks a writ of habeas corpus pursuant to 28 U.S.C. §

2254, challenging his state court conviction for burglary, criminal impersonation, and criminal

weapon possession. The petition is grounded on three theories of relief: (1) his trial counsel,

Elise Flamholtz, performed inadequately in violation of the rule announced in <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984); (2) he was denied his "right to a speedy

trial"; and (3) the evidence at trial was legally insufficient to sustain his burglary and criminal

impersonation convictions.

For the reasons set forth below, Yampierre's writ is denied and his petition is dismissed.

**Background**

On November 9, 1999, following a jury trial in Supreme Court, Queens County,

Yampierre was convicted of burglary in the second degree, N.Y. Penal Law § 140.25, criminal

impersonation in the first degree, N.Y. Penal Law § 190.26, and criminal possession of a weapon

in the second and third degrees, N.Y. Penal Law §§ 265.02 & 265.03. On February 10, 2000, he

was sentenced as a violent felony offender to an indeterminate prison term of 16 years to life.



## I.    Events Leading to Arrest

The evidence adduced at trial established that, in January 1998, Edgar Vasquez resided on the second floor of a building located at 78-04 Jamaica Avenue in Queens County and operated an exterminating business out of the basement. (Transcript of Record, People v. Yampierre, Indict. No. 2290/98 (Queens County Ct. 1999) ("Tr.") at 807-08.) The basement office could only be accessed through metal doors opening on to the sidewalk (id. at 816-17), but the location was not marked by any business signs. (Id. at 814.) At approximately 11:30 A.M. on January 15, 1998, petitioner and co-defendant Felix Acevedo approached Vasquez outside of the building and explained that they needed a termite inspection for a house they intended to purchase. (Tr. at 818-19.) Vasquez requested their telephone number, but discovered that the number was fake when he called an hour later. (Id. at 820.) Later still that day, Vasquez again saw the two men hanging around the building, and when he started to drive away, they followed him for a couple of blocks. (Id. at 825-26.)

Shortly after noon on the following day, Vasquez was on the phone in his office when petitioner and Acevedo came down into the basement through the metal doors, which were unlocked but closed at the time. (Id. at 814, 817.) Petitioner displayed a fake police shield which he had been wearing around his neck and told Vasquez that they needed to speak to him. (Id. at 827-28.) Vasquez could tell that the shield appeared fake, and he did not believe that petitioner was a police officer. (Id. at 882.) Vasquez turned away and pretended to speak on the phone, but petitioner pointed a .38 caliber revolver at his head. (Id. at 829-30.) At this point, fearing for his own life and the lives of his family upstairs, Vasquez testified that he rammed his head into petitioner's chest, dislodging the gun and leading to a struggle. (Id. at 831-32.) Acevedo, carrying a gun in his waistband, attempted to pull Vasquez off of petitioner. (Id.) Noticing that

2

his son was coming down the stairs, Vasquez began to scream, causing Acevedo to run away and drop his gun on the basement steps. (Id. at 832-34.) Two other men who were outside the building, Patrick Nicolosi and Vasquez's uncle William, heard the scream and came inside to help restrain Yampierre, who they bound and held until the police arrived. (Id. at 837.)

Police Officer Michael Ciampo appeared on the scene shortly thereafter and arrested petitioner (id. at 927-30), recovering two loaded firearms and a fake New York City police shield from the basement floor. (Id. at 931-32, 939.) Later that day, Detective Raymond Medina determined that the shield was not legitimate because it was the wrong size and did not have any identifying shield numbers. (Id. at 976-77.) Detective Medina was also able to determine that Acevedo was petitioner's fleeing accomplice, and, on March 5, placed him under arrest following a line-up identification. (Id. at 977, 983.) Petitioner was indicted for burglary and several related crimes on July 1, 1998.

## II.   Criminal Trial

On April 26, 1999, petitioner moved to dismiss the indictment pursuant to New York's "speedy trial" statute, Criminal Procedure Law § 30.30, which requires that the prosecution be ready for a felony trial within "six months of the commencement of a criminal action." N.Y. Crim. Proc. Law. § 30.30(1)(a) (McKinney 2006). Petitioner argued that 222 days chargeable to the prosecution had elapsed since the arraignment, but the trial court denied the motion. In response to petitioner's application to reargue, the trial court issued another denial on August 11, 1999, determining that a total of only 126 days of delay were chargeable to the prosecution.

The criminal trial for Yampierre and Acevedo began on October 27, 1999.[1] The prosecution called to the stand Vasquez, Vasquez's wife, and police officers who were involved with the investigation (including Ciampo and Medina). The defense did not call any witnesses,

---

[1]   Acevedo did not appear at the trial and was tried, convicted, and sentenced *in absentia*.

3

although Flamholtz suggested in her opening statement that the fight was a mere business dispute gone awry. (Tr. at 803.) Flamholtz's strategy at trial was primarily to impeach Vasquez's testimony and paint him as a liar. For example, she explained in opening and closing argument that Vasquez's story about ramming his head and overpowering two armed assailants was too incredible to be believed. As Flamholtz put it, Vasquez was "either so brave or so stupid, it's astonishing." (Id. at 804.)

Prior to summation, the court attempted to nail down the prosecution's theory with respect to second degree burglary, which encompasses both "entering" and "remaining" on another's premises unlawfully. See infra Part IV. The court noted that throughout trial the prosecution indicated that the defendants "entered" Vasquez's building unlawfully, but the evidence was actually more consistent with a theory of remaining unlawfully. (Tr. 1063-65.) After lengthy discussion on the record, and some prodding by the court, the prosecution elected the "remaining" unlawfully theory, which drew strenuous objections from the defense because the "entering" theory was "the theory presented in the grand jury and that should be the theory presented to the jury." (Id. at 1065.) The jury, nonetheless, received the "remaining" unlawfully charge.

## III.    **Post-Trial History**

### A.    Direct Appeal

Yampierre appealed his conviction to the Appellate Division, Second Department. Represented by new counsel, he raised three grounds for reversal: (1) the trial court erred when it denied defendant's motion to dismiss the indictment on the basis that his "right to a speedy trial" was violated; (2) the evidence was legally insufficient to sustain the criminal impersonation conviction because it could not establish that he had displayed the police shield "with the intent

4

to induce [Vasquez] to submit to or act in reliance of his pretended authority"; and (3) the evidence was legally insufficient to sustain the burglary conviction because it could not establish that Yampierre had entered the premises unlawfully. (Brief for Appellant, Appeal Docket # 2000-2047, dated February 21, 2001 ("App. Br.") at 17-19.). Petitioner also argued that the trial court should not have permitted the prosecution to "sandbag" the defense at trial by changing its theory from one of "entering" to one of "remaining" unlawfully. (Id.)

On December 9, 2002, the Second Department unanimously affirmed the convictions, rejecting all of petitioner's arguments on the merits. People v. Yampierre, 300 A.D.2d 419, 750 N.Y.S.2d 787 (2nd Dep't 2002). The court found that the trial court properly denied the § 30.30 motion because the delays resulted from motions made by, or adjournments acquiesced to, by defense counsel, which "delays did not directly implicate the People's ability to proceed with the trial." Id. at 419. The court also stated, without further elaboration, that "the evidence in the light most favorable to the prosecution . . . was legally sufficient to establish the defendant's guilt beyond a reasonable doubt" and that "[t]he defendant's remaining contentions are without merit." Id. at 420.

On February 9, 2003, petitioner sought leave to appeal to the Court of Appeals, arguing the same points. Yampierre's application was denied on March 18, 2003. People v. Yampierre, 99 N.Y.2d 634, 760 N.Y.S.2d 116, 790 N.E.2d 290 (2003).

B.    Collateral Attack in State Court

On June 2, 2004, petitioner filed a *pro se* § 440 motion to vacate his conviction by reason of ineffective assistance of trial counsel.[2]  Yampierre argued that Flamholtz: (1) persuaded him not to testify in his own defense based on her "mischaracterization" of the trial court's Sandoval

---

[2]    The parties disagreed on the exact date of the § 440 filing, but Judge Ross previously resolved this factual dispute in favor of petitioner. (See Order dated March 23, 2006, Docket # 17.)

ruling; (2) failed to investigate and/or call to the stand witnesses, including Teresa Yampierre, who would have supported the claim that Vasquez fabricated the allegations; (3) failed to challenge his status as a "violent felony offender"; (4) failed to request lesser included offenses in the jury instructions; (5) failed to request "missing witness" jury instructions; and (6) failed to object to the alleged "change" in the prosecution's burglary theory at trial.

On October 22, 2004, the court denied the motion to vacate. First, the court found that claims (3) through (6) were procedurally barred pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c), because "sufficient facts appeared on the record regarding such claims and defendant unjustifiably failed to raise them on [direct] appeal." (See Order dated Oct. 22, 2004, People v. Yampierre, Indict. No. 2290/98 (Queens County Ct. 2004), at 2.) The court denied claims (1) and (2) on the merits, finding that Yampierre "failed to set forth any evidentiary facts in support" aside from "self-serving statements . . . insufficient to rebut the strong presumption of counsel's effectiveness" and that the decision to not call Yampierre or others were strategic decisions which the court would not second-guess. (Id. at 2-3.) Finally, the court found that petitioner could not show that Teresa Yampierre's testimony would have been admissible or beneficial to the defense, as her affidavit, submitted in connection with the § 440 motion, was defective. (Id.)

Yampierre's application for leave to appeal the § 440 decision to the Second Department was denied on March 9, 2005.

C.   Habeas Corpus

On March 23, 2005, Yampierre filed the instant petition, raising all of the claims that he raised on his direct appeal and in his § 440 motion. On March 23, 2006, Judge Ross denied respondent's motion to dismiss the petition as time barred, finding that the petition was timely

6

filed since the applicable statute of limitations was tolled during the pendency of Yampierre's § 440 motion. (See Docket # 17.)

**Discussion**

## I.    The AEDPA Standard of Review

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner only if a claim that was "adjudicated on the merits" in state court resulted in a decision that was (1) contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); see Gutierrez v McGinnis, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). A state court decision is "contrary to" established federal precedent if it "contradicts the governing law set forth in [Supreme Court] cases" or arrives at a different conclusion from the Supreme Court on "materially indistinguishable" facts. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519-20 (2000). A state court decision involves an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of" that case. Id. at 413. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, the state court's application must involve "[s]ome increment of incorrectness beyond error". Francis S. v. Stone. 221 F.3d 100, 111 (2d Cir. 2000).

In addition, under AEDPA, "a state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" Drake v. Portuondo, 553 F.3d 230, 239 (2d

Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)). "This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility." Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003).

## II.     Ineffective Assistance of Trial Counsel

In his petition, Yampierre argues that Flamholtz (1) failed to investigate witnesses; (2) wrongfully persuaded him not to testify based on a mischaracterization of the court's Sandoval ruling; (3) failed to challenge his status as a "violent felony offender"; (4) failed to request the trial court to charge lesser included offenses; (5) failed to request a "missing witness" jury instruction regarding Nicolosi; and (6) failed to object to a "change" in the prosecution's theory of burglary at trial. Respondent argues that the Court may not review claims (3) to (6) because they are procedurally barred, and that claims (1) and (2) fail on their merits.

### A.     Procedural Bar

Section 440.10(2)(c) of New York's Criminal Procedure Law requires a court to deny a motion to vacate where "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review . . . occurred owing to the defendant's unjustifiable failure to . . . raise such ground or issue upon an appeal." A district court considering a habeas petition may not review a claim if the last state court to consider the claim "clearly and expressly rel[ied] on an independent and adequate state ground" to deny relief, such as a procedural bar. Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991).

Here, the adverse determination of poetitioner's § 440 motion with respect to claims (3) through (6) rested on "independent" state law, since the state court's reliance on the procedural

8

bar was "clear from the face of the opinion." <u>Williams v. Goord</u>, 277 F. Supp.2d 309, 318

(S.D.N.Y. 2003) (<u>quoting Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 1999));

<u>see Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005) (noting that habeas review is precluded

"when the last state court rendering a judgment in the case clearly and expressly states that its

judgment rests on a state procedural bar") (internal quotation marks omitted). Further, §

440.10(2)(c) is a "firmly established and regularly followed" state procedural rule that can serve

as an "adequate bar to merits review" of a claim of ineffective assistance of trial counsel.

<u>Williams</u>, 277 F. Supp.2d at 318-19 (<u>quoting Arce v. Smith</u>, 889 F.2d 1271, 1273 (2d Cir.

1989)). Petitioner contends, however, that the state court erred in applying § 440.10(2)(c)

because the procedural rule only applies to bar review "[w]here the basis for a claim of

ineffective assistance of counsel is well established in the trial record."[3] <u>Murden v. Artuz</u>, 497

F.3d 178, 196 (2d Cir. 2007), <u>cert. denied</u>, <u>Murden v. Ercole</u>, 552 U.S. 1150, 128 S. Ct. 1083

(2008); <u>see Sweet v. Bennett</u>, 353 F.3d 135, 139 (2d Cir. 2003) (noting that claims that rely on

facts "not demonstrable on the main record . . . are more appropriate for collateral or post-

conviction attack, which can develop the necessary evidentiary record").

Nonetheless, petitioner's allegations that his counsel failed to make objections or requests

are paradigmatic examples of claims that are determinable from a trial record and procedurally

barred by § 440.10(2)(c). <u>See, e.g.</u>, <u>Id.</u> at 140 (counsel's failure to object to trial court's charge

"was particularly well-established in the trial record"); <u>Aparicio</u>, 269 F.3d at 92-93 (counsel's

---

[3]     Petitioner cites to the New York Court of Appeals for the proposition that it is "the suggested practice" for ineffective assistance claims to file a § 440 motion rather than pursue the issue on direct appeal. See <u>People v. Brown</u>, 45 N.Y.2d 852, 853-54, 410 N.Y.S.2d 287, 287, 382 N.E.2d 1149, 1149 (1978) ("[I]n the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under C.P.L. 440.10."). However, no hearing is necessary where § 440.10(2)(c) is inapplicable and "sufficient facts" appear on the record to have permitted review of the issue on direct appeal. <u>Murden</u>, 497 F.3d at 196 (2d Cir. 2007).

failure to request eyewitness identification instruction "unjustifiably" not raised on appeal); Smith v. West, 640 F. Supp. 2d 222, 231-34 (W.D.N.Y. 2009) (upholding § 440(2)(c) bar for claims that counsel failed to object to prosecution's "changing the theory" of the case and presentation of rebuttal witness); Smith v. Artuz, 03-CV-6636, 2009 U.S. Dist. LEXIS 50264, at *14-*15 (W.D.N.Y. June 16, 2009) (finding "claims regarding trial counsel's failure to make proper objections and challenge the validity of his prior convictions are based on matters within the trial record"); Washington v. Ercole, 08-CV-4835, 2009 U.S. Dist. LEXIS 50120, at *6 (E.D.N.Y. June 5, 2009) (finding that "[a]ll of the facts pertinent to petitioner's claim" that counsel failed to object to admission of a suggestive police lineup "were clearly contained within the trial record"). Petitioner even concedes that "the essential foundation" of his claims "were part of the trial record." (Pet'r Reply Br. at 12-13.)

Flamholtz's alleged failure to object to the prosecution's "change of the theory of the case" is based on facts entirely in the record, including the pre-trial bill of particulars which petitioner claims limited the prosecution's burglary theory to "entering" Vasquez's premises unlawfully.[4] The same is true of her alleged failure to challenge the violent persistent felon adjudication, since Yampierre personally addressed his prior convictions at his sentencing, and counsel argued that the probation report incorrectly stated that Yampierre had three prior violent convictions. (Transcript of Hearing, February 10, 2000, Indict. No. 2290/98 (Queens County Ct. 2000), at 3-4, 6-10.) Petitioner's allegation that Flamholtz "incorrectly advised him not to upset the court" by personally advancing such a challenge is irrelevant to whether that challenge was factually appropriate. See Serrano v. Senkowski, 02-CV-8708, 2004 U.S. Dist. LEXIS 18936, at

---

[4]     In any event, petitioner's allegation is false, because Flamholtz expressly objected to the alleged change in theory: "I would, for the record, note my objection to that. I believe that [the] [P]eople had gone forward with enters unlawfully. I believe that that was the theory presented in the grand jury and that should be the theory presented to the jury." (Tr. at 1065.)

*40 (S.D.N.Y. Sept. 23, 2004) (noting that petitioner's "own thoughts at the time are not relevant" to his claim that his counsel was ineffective in challenging jurors). Similarly, that Yampierre "expressly asked his trial counsel to request lesser included offenses be charged" and "urged counsel to request a missing witness charge" have no bearing on whether counsel was obligated to make those requests. More to the point, of course, the state court's reliance on § 440.10(2)(c) thus qualifies as an adequate and independent ground precluding habeas review for these four claims.[5]

The Court may nonetheless consider petitioner's claims on the merits if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565. Neither exception applies here.

A petitioner establishes cause for a default by demonstrating that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). Petitioner references some potential "causes" that are wholly inapplicable, such as interference of prison officials (Pet'r Reply Br. at 11-12), but also implies that his counsel failed to raise the issues on direct appeal. Ineffective assistance of appellate counsel can serve as a cause for default, see DeNormand v. Graham, 06-CV-294, 2009 U.S. Dist. LEXIS 109180, at *13 (W.D.N.Y. Nov. 23, 2009), but to do so it must rise to the level of a constitutional deficiency and be brought as an independent claim before the state courts. Edwards v. Carpenter, 529 U.S. 446, 453, 120 S. Ct. 1587, 1592

---

[5] Although not specifically listed as a claim in his petition, Yampierre appears to ground these claims in a broader allegation that counsel failed to present his version of the events of January 16, 1998, arguing, counter-productively to this claim, that the requests would have been supported had counsel called petitioner to give his story. Stated differently, petitioner (unwittingly) acknowledges that Flamholtz's failures to request the instructions were not failures but determinations that such requests were not supported by the record.

(2000) (noting that "an ineffective assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). Here, Yampierre never brought a claim of ineffective assistance of appellate counsel to any New York Court in the requisite *coram nobis* proceeding, so he has not shown "cause" for his § 440.10(2)(c) default.

A "fundamental miscarriage of justice" justifying a procedural default is only found "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496, 106 S. Ct. at 2649. To this end, a petitioner can establish actual innocence by demonstrating that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation marks omitted). Here, Yampierre has not made this showing, and the record reveals bountiful evidence demonstrating his guilt.

B.      Claims (1) and (2) Fail on Merit Review

Petitioner's claims that counsel was ineffective for (1) failing to investigate and call witnesses such as Teresa Yampierre and (2) persuading him not to testify in his own defense were not procedurally barred, and the state court properly reviewed them on their merits. See Murden, 497 F.3d at 196 (noting that "the state has not shown that state courts regularly demand compliance with [§ 440.10(2)(c)] when a defendant makes reference to uncalled witnesses"); see, e.g., McCullough v. Bennett, 02-CV-5230, 2010 U.S. Dist. LEXIS 2284, at *18 (E.D.N.Y. Jan. 12, 2010); Samuels v. Bennett, 03-CV-2340, 2009 U.S. Dist. LEXIS 77357, at *43 (S.D.N.Y. Mar. 27, 2009). Pursuant to AEDPA, the state court's determinations on this score are entitled to strong deference on habeas review. See Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006) (noting that petitioners' burden of establishing ineffective assistance is "enhanced by the hurdle posed by the highly deferential review accorded state court adjudications").

"A criminal defendant has a high burden to overcome to prove the deficiency of counsel." Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006). Under the standard established by the Supreme Court in Strickland, a petitioner must "meet both a 'performance' test, showing that counsel's representation 'fell below an objective standard of reasonableness,' and a 'prejudice' test, demonstrating that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Palacios v. Burge, 598 F.3d 556, 561 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 694). In assessing the objective reasonableness of performance, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and must "eliminate the distorting effects of hindsight." Brown v. Greene, 577 F.3d 107, 110 (2d Cir. 2009) (internal quotation marks omitted). On the other hand, with respect to determining prejudice, a court considers the totality of the evidence, and may benefit from hindsight. Hemstreet v. Greiner, 491 F.3d 84, 91 (2d Cir. 2007), cert. denied, Hemstreet v. Ercole, 552 U.S. 1119 (2008).

Counsel's performance may be objectively unreasonable where, without justification, counsel fails to inquire into or follow up on leads that may produce exculpatory evidence. See Strickland, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."); Ryan v. Rivera, 21 Fed. Appx. 33, 35 (2d Cir. 2001) (noting that "the failure to interview a proposed alibi witness is unreasonable in some circumstances"). However, "[c]ourts applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury. The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) (internal quotation marks omitted). This deference also attaches to the decision whether to

put a criminal defendant on the stand. See Narvaez v. United States, 97-CV-8745, 1998 U.S. Dist. LEXIS 7391, at *17 (S.D.N.Y. May 19, 1998) ("An attorney's refusal to permit a defendant to testify is analyzed as an ineffectiveness claim under Strickland."); United States v. DeFeo, 90-CR-250, 1996 U.S. Dist. LEXIS 22523, at *57 (S.D.N.Y. Jan. 6, 1997) (noting that "[t]he decision to place a criminal defendant on the stand is perhaps the most difficult trial decision to make" and a tactical decision to "keep a defendant off the stand does not amount to ineffective assistance of counsel").

Petitioner is unable to rebut the presumption of effectiveness. His contention that Flamholtz failed to investigate witnesses and did not let him testify is rooted only in his own self-serving statements regarding the events leading to his arrest.[6] See Greiner, 417 F.3d at 322 ("In nearly every case that concludes that counsel conducted a constitutionally deficient investigation, the courts point to readily available evidence neglected by counsel"); McLean v. Green, No. 05-CV-5603, 2009 U.S. Dist. LEXIS 122079, at *47 (E.D.N.Y. Apr. 15, 2009) (finding petitioner's "conclusory assertions" that his attorney did not investigate witnesses with exculpatory testimony "insufficient to overcome the strong presumption that counsel acted reasonably"). Although Ms. Yampierre submitted an affidavit stating that she was never interviewed, it also indicates that Flamholtz was apprised of the substance of her potential testimony. Petitioner even admits that counsel told him that "she was not calling him or Ms. Yampierre as witnesses" due to her "believe [sic] that his prior convictions would cast harmful doubt on his credibility" and that "Ms. Yampierre[']s testimony would be useless to the

---

[6]     Yampierre claims that he visited Vasquez's business to "straighten out" a money loan made to Yampierre's friend's nephew. (See § 440 Brief, dated June 8, 2004, at 7.) Having heard of Vasquez's "reputation", he had asked Acevedo to accompany him. He also contacted Teresa Yampierre beforehand and told her what he was doing. When petitioner went to the business, he claims that Vasquez shouted at him, prompting him to strike Vasquez. At this point, Vasquez's "bodyguards" responded and a fight ensued.

defense." (§ 440 Br. at 8.) Flamholtz's determinations that investigating Ms. Yampierre further and calling either witness to the stand would not be beneficial were, in light of the overall record, clearly strategy calls which this Court will not second guess.

Even if Flamholtz's decisions were objectively unreasonable, Yampierre cannot establish prejudice. He speculates that the putative testimony would have affected the trial, but the totality of the evidence renders it unlikely that his conviction would have been undermined. See Schulz v. Marshall, 528 F. Supp. 2d 77, 100 (E.D.N.Y. 2007), aff'd, 2009 U.S. App. LEXIS 19960 (2d Cir. Sept. 4, 2009). Petitioner's own testimony, encrusted with its impeachment by prior convictions, would have merely set up a credibility question for the jury to determine. Further, Ms. Yampierre's affidavit reveals that her testimony about the crime would not be based on personal knowledge, but rather what petitioner had told her before and after the event – objectionable hearsay. The affidavit also includes incriminating information that petitioner "confided" in her that he "was going to pay Mr. Edgar Vasquez a visit in hopes of scaring him on the [sic] behalf [o]f one of his friend[s]." Far from undermining the conviction, Ms. Yampierre's testimony, if a hearsay objection was waived or an exception fashioned, might have strengthened the prosecution's case against petitioner.

In this light, the state court's refusal to vacate petitioner's conviction on the grounds of ineffective assistance of counsel was not unreasonable under AEDPA.[7]

### III.    <u>Right to a Speedy Trial</u>

It is axiomatic that AEDPA only permits federal courts to vacate state law convictions where the convictions violate well-established *federal* law.  28 U.S.C. § 2254(d); see Estelle v.

---

[7] Indeed, had the four other charges of counsel ineffectiveness leveled by Yampierre not been procedurally barred, the result would be the same. Applying the same <u>Strickland</u> analysis to these charges on this record, claims of ineffectiveness grounded in these claims are wholly without merit.

McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions . . . a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Yampierre claims that his "right to a speedy trial was violated" when the trial court "denied appellant's motion to dismiss the indictment on that basis", but his argument is entirely premised on New York's "speedy trial" statute, N.Y. Crim. Proc. Law § 30.30, not a federal constitutional or statutory right. Respondent argues that Yampierre is impermissibly asking for review of a purely state law question. Yampierre replies that he did assert violations of his constitutional right to a speedy trial which are now incorporated into his habeas petition.

A.    Exhaustion

Before a state prisoner is entitled to review of his claims by a federal court, he must first present those claims and "exhaust[ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1); see O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 1732 (1999). To satisfy this requirement, "the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349 (2004). To fairly present a constitutional claim, the petitioner may alert the state court to its federal nature, which can be accomplished not only by direct reference to the constitutional provision, but also by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005) (quoting Daye v. Attorney Gen. of New York, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)).

As an initial matter, if Yampierre relied only on Crim Proc. Law § 30.30 to establish a violation of his right to a speedy trial in state court, then he would not be entitled to habeas review. While § 30.30 is known as the "speedy trial rule enacted by New York", and "in large part serves the same purposes, the history of its adoption makes evident that it addresses only the problem of prosecutorial readiness, and is not a speedy trial statute in the constitutional sense." People v. Anderson, 66 N.Y.2d 529, 535, 498 N.Y.S.2d 119, 123, 488 N.E.2d 1231, 1234-35 (1985). It is well-established, therefore, that solely raising a § 30.30 claim does not "fairly present" a Sixth Amendment speedy trial claim. Bowers v. Miller, 05-CV-6023, 2009 U.S. Dist. LEXIS 59766, at *13 (W.D.N.Y. July 10, 2009); Rodriguez v. Superintendent, 549 F. Supp.2d 226, 236-37 (N.D.N.Y. 2008); Smith v. Maher, 468 F. Supp.2d 466, 470-71 (W.D.N.Y. 2006).

The inquiry does not end here, however, because Yampierre referenced the Constitution in his state court briefs. Although his argument to the Second Department relied on § 30.30, the brief's introduction mentioned a "constitutional right to a speedy trial" and a "right to a speedy trial as guaranteed by the Sixth Amendment."[8] (App. Br. at 4-5.) In his letter to the Court of Appeals, he discussed how his "fundamental right to a speedy trial, as guaranteed by the Sixth Amendment to the United States Constitution, was violated and defendant was unduly prejudiced." (See Letter to Judge Cipatrick, dated Feb. 9, 2003, at 2.) Whether these references separate and apart from petitioner's state law argument "fairly presented" the federal issue is a close question. At least one Second Circuit opinion indicates that a passing allusion to a

---

[8]     Yampierre's also argues that the relevant section of his brief to the Second Department included a citation to People v. Liotta, 79 N.Y.2d 841, 580 N.Y.S.2d 184, 588 N.E.2d 82 (1992), which petitioner admits "doesn't specifically cite federal law," but rather cites to an earlier Court of Appeals case, People v. Hamilton, 46 N.Y.2d 932, 415 N.Y.S.2d 208, 388 N.E.2d 345 (1979), which in turn cites to a Second Circuit case, United States v. Pierro, 478 F.2d 386 (2d Cir. 1973), which allegedly "does rely on federal law." This connection is far too attenuated to conclude that the federal issue was fairly presented to the state courts. Even if the Court concluded otherwise, the "federal law" discussed in Pierro was a Second Circuit procedural rule, not the Constitution.

constitutional provision in a brief's point heading may be sufficient for exhaustion purposes. See Gonzales v. Sullivan, 934 F.2d 419, 423 (2d Cir. 1991) ("[I]t would be better practice for counsel when relying on a broad constitutional doctrine like the Fourteenth Amendment to support the claim with a factual premise and by citation to federal cases . . . [but] we believe nonetheless that petitioner at least arguably complied with the exhaustion requirements"); see also Summerville v. Conway, 07-CV-4830, 2008 U.S. Dist. LEXIS 60213, at *19 (E.D.N.Y. Aug. 6, 2008) (describing Gonzales as having found "exhaustion by the slimmest of margins"). Nevertheless, the Second Circuit has not addressed this issue in the context of a Sixth Amendment claim, and other district courts have rejected the notion that snippet mention of that provision constitutes fair presentation. See Holden v. Miller, 00-CV-0926, 2000 U.S. Dist. LEXIS 11889, at *22 (S.D.N.Y. Aug. 8, 2000) (noting that "a second line of cases, hold[ing] that a minimum reference . . . satisfies the exhaustion requirement . . . has only been applied in the context of a 'due process' or 'fair trial' argument, not in the context of a speedy trial claim"); see, e.g., Arce v. West, 04-CV-6607, 2009 U.S. Dist. LEXIS 57223, at *11 (W.D.N.Y. July 6, 2009) (finding that "vague reference to the 'constitutional right to a speedy trial', without appropriate argument, and with the only argument being under the state statutory speedy trial right of [§ 30.30], was not sufficient to put the state appellate court on notice of the federal constitutional basis of the claim"); Cruz v. Greiner, 98-CV-7939, 1999 U.S. Dist. LEXIS 17695, at *64-*66 (S.D.N.Y. Nov. 17, 1999) (finding insufficient presentation of speedy trial claim where "only mention of the federal Constitution appeared in the heading of [petitioner's] First Department brief").

This Court concludes that Yampierre's utter failure to present an argument based on constitutional jurisprudence render his Sixth Amendment claim unexhausted. That the Second Department's opinion on petitioner's direct appeal relied solely on § 30.30 confirms this Court's

belief that the issue was not fairly presented.[9]  Accordingly, any purported constitutional speedy trial claim is dismissed.

## B.   A Meritless Claim In Any Event

Even if petitioner had exhausted the claim, it would fail on the merits.  Unlike § 30.30, which sets forth a six month period for trial readiness, the Supreme Court has "refused to 'quantif[y]' the [Sixth Amendment] right 'into a specified number of days or months'".  Vermont v. Brillon, 129 S. Ct. 1283, 1290 (2009)  (citing Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182 (1972)).  In determining whether there has been a violation of the Sixth Amendment speedy trial right, courts consider four factors: (a) the length of the delay and whether it was "uncommonly long"; (b) the reason for the delay, including whether the prosecution or the defendant was responsible for it; (c) the defendant's assertion of the right; and (d) whether the defendant suffered prejudice as a result of the delay.  Doggett v. United States, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992) (citing Barker, 407 U.S. at 530).

The first factor, length of delay, "is to some extent a triggering mechanism.  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  Barker, 407 U.S. at 530, 92 S. Ct. at 2192.  Here, roughly 20 months elapsed between Yampierre's arrest and trial, which is sufficiently long to show presumptive prejudice.  See United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir. 1992) (noting a "general consensus that a delay of over eight months meets this standard [of presumptive prejudice]").  However, this delay does not *per se* establish a Sixth Amendment violation, as the Supreme Court and Second Circuit have found no speedy trial violations in cases where the period between arrest and trial was significantly longer.  See, e.g., Barker, 407 U.S. at 533-34, 92

---

[9]    Yampierre would now be barred by § 440.10(2)(c) from raising the Sixth Amendment claim in a state court collateral attack because he should have, and failed to, raise it on direct appeal.

S. Ct. at 2194 (over 5 years); United States v. Lane, 561 F.2d 1075 (2d Cir. 1977) (58 months); Rayborn v. Scully, 858 F.2d 84, 89 (2d Cir. 1988) (over 7 years); Holden, 2000 U.S. Dist. LEXIS 11889, at *37 (30 months).

When analyzed under the other three factors, more critically, the delay here did not violate Yampierre's constitutional rights to a speedy trial. Although Yampierre argued that 222 days of delay were attributable to the prosecution, the state courts found that the actions of the defendants and their counsel constituted a significant reason for delay. Yampierre, 300 A.D.2d at 419, 750 N.Y.S.2d at 788. Further, petitioner alleges no invidious reasons for any delay that would weigh in his favor, such as deliberate attempts "to hamper the defense". Barker, 407 U.S. at 531, 92 S. Ct. at 2192; see Flowers v. Warden, Conn. Corr. Institution, 853 F.2d 131, 134 (2d Cir. 1988) (24 months) (acceptable delay "due solely to institutional dysfunction"); Holden, 2000 U.S. Dist. LEXIS 11889, at *37 ("[S]ince nothing in the record indicates a deliberate attempt by the State to delay the trial in order to hamper [petitioner's] defense, this factor does not weigh in [his] favor."). Similarly, petitioner has never alleged that he suffered any prejudice from delay, so that factor weighs against a finding of a violation. See United States v. Jones, 129 F.3d 718, 724 (2d Cir. 1997) (noting that "courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice"). Finally, the "assertion of the right" factor does not weigh in either party's favor, since petitioner moved to dismiss the indictment on speedy trial grounds prior to trial, but failed to bring up the constitutional issue.

Having considered the four factors and all of the relevant circumstances in this case, the Court finds that petitioner's Sixth Amendment claim must be rejected. Whether denied review by the procedural bar, or considered on the merits, it is clear that Yampierre's petition for habeas corpus cannot succeed on the ground that he was denied a speedy trial.

## IV.    **Sufficiency of Evidence**

Finally, petitioner claims that there was legally insufficient evidence to establish his guilt of the crimes of criminal impersonation in the first degree and burglary in the second degree. Yet, he has failed to show that the challenged state court determinations were contrary to, or an unreasonable application of, Supreme Court precedent, and specifically, the standard for insufficiency of evidence announced in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979).

In assessing a claim regarding the sufficiency of trial evidence, a habeas court must view all "evidence in the light most favorable to the prosecution", and the applicant is entitled to habeas relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" based on the evidence adduced at trial. Flowers v. Fisher, 296 Fed. App'x. 208, 210 (2d Cir. 2008) (quoting Jackson, 443 U.S. at 324, 99 S. Ct. at 2791-92 (1979)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326, 99 S. Ct. at 2793). Given that a reviewing court may not substitute its judgment for that of a rational jury, a petitioner "bears a very heavy burden" in challenging the sufficiency of evidence upon which he was convicted. Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997).

Ultimately this was a case about credibility: there were no third party eyewitnesses at trial to the encounter involving petitioner, Acevedo and Vasquez. Before the jury, petitioner did not dispute that a physical altercation had taken place, and the jury was left to weigh the veracity of Vasquez's account of the incident. This Court is in no position to back-seat drive the jury's determination that Vasquez told the truth. See Minigan v. Donnelly, 01-CV-26, 2007 U.S. Dist.

LEXIS 64446, at *72-*73 (W.D.N.Y. Feb. 16, 2007) (noting that the reviewing court may not "attempt to second guess a jury's credibility determination") (citing United States v. Florez, 447 F.3d 145, 156 (2d Cir. 2006)). The issue, therefore, is whether a reasonable jury could have found the elements of the state law crimes satisfied based on the testimony of Vasquez and other prosecution witnesses.

According to N.Y. Penal Law § 190.26, "[a] person is guilty of criminal impersonation in the first degree when he [p]retends to be a police officer . . . or wears or displays without authority, any . . . badge . . . thereof . . . or expresses by his or her words or actions that he or she is acting with the approval or authority of any police department . . . and [s]o acts with intent to induce another to submit to such pretended official authority or otherwise to act in reliance upon said pretense and in the course of such pretense commits or attempts to commit a felony." On direct appeal, petitioner argued that the evidence was insufficient because Vasquez admitted that he did not believe the police shield was legitimate or that Yampierre was a police officer, and thus "[t]here is no evidence that complainant in any way submitted to the pretended authority or in any way acted in reliance upon it." (App. Br. at 16-17.) However, petitioner misinterprets the statute, which does not require that the victim *actually* submit to authority, but only that petitioner *intended* to induce him to submit. Here, Vasquez testified that petitioner displayed a police shield and said he needed to talk, and Ciampo explained that he recovered a false police shield at the crime scene. This record supports a conclusion that petitioner was guilty of impersonation of a police officer beyond a reasonable doubt .

As to burglary, N.Y. Penal Law § 140.25 provides that "[a] person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . he uses or threatens the immediate use of a dangerous

22

instrument, or displays what appears to be a . . . firearm." "A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public. . . ." N.Y. Penal Law § 140.00(5).

Although the trial court ultimately permitted the prosecution to proceed on the "remains unlawfully" theory, petitioner's argument that the trial court was wrong to permit this "change" in theory is of no consequence, because there was sufficient evidence of both theories to uphold the conviction. Vasquez testified that there was no business sign on his building, his basement was closed off by metal doors, and his office was not frequented by customers, casting doubt whether permission to enter the premises was implied. As the trial court explained, whether Yampierre's entry was unlawful would have been a fact issue for the jury. (Tr. at 1060.) Further, it would not be difficult for a jury to infer that, even if entry was lawful, Yampierre was remaining unlawfully once he pointed a gun at Vasquez. The state courts' determinations do not run afoul of the Jackson standard. Petitioner's claim of legal insufficiency is without constitutional merit.

## Conclusion

For all of the foregoing reasons, Yampierre's petition for a writ of habeas corpus is dismissed with prejudice and the writ is denied. Since Yampierre has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28

U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
        February 25, 2010

ERIC N. VITALIANO
United States District Judge